Alise Malikyar
PO Box 1386
Lafayette, CA 94549
Fax: (407) 209-2126

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| ALISE MALIKYAR, <br><br> Plaintiff, <br><br> v. <br><br> JOHN SRAMEK, et al., <br><br> Defendants. | Civil Case No.: 07-03533 WHA <br><br> DECLARATION OF ALISE MALIKYAR IN SUPPORT OF PLAINTIFF ALISE MALIKYAR'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT <br><br> Hearing Date: November 8, 2007 <br> Time: 8:00 a.m. |

1. My name is Alise Malikyar. I am the Plaintiff in this action, with an address at PO Box 1386, Lafayette, CA 94549. I am familiar with the facts and circumstances described in Plaintiff's Complaint. I have personal knowledge of the facts set forth below, and if called as a witness, I would testify as set forth below:

2. On July 17, 1999, before I married Robert Jacobsen, we signed a Pre-Nuptial Agreement attached to this declaration as Exhibit 1. Exhibit 1 is a true and correct copy of that Agreement. My intention in signing this document was to keep all property acquired during our marriage separate.

3. On September 11, 2001, Mr. Jacobsen and I signed Exhibit 2. Exhibit 2 is a true and correct copy of that Agreement. The purpose of this Marital Agreement was to formalize the Pre-Nuptial Agreement we had signed precluding the formation of community property in the absence of an express written agreement.

4. I have not filed for bankruptcy in any court and am not in bankruptcy in any jurisdiction.

---

1

DECLARATION OF ALISE MALIKYAR IN SUPPORT OF PLAINTIFF ALISE MALIKYAR'S
OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

5. I have not signed any documents that would indicate that "causes of action" that arose during our marriage constitute "community property".

6. The house at 2324 Tice Valley Road is my separate property. Exhibits 1 and 2. I used the voice landline phone(s) at that address with telephone numbers (925) 210-0200 and (925) 210-1167 during the time period that the wiretap was discovered on my home. I am informed and believe and thereon allege that my personal telephone communications were intercepted by the person or persons who placed the tap on the phone.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 18, 2007, at Walnut Creek, CA, California.

Date: October 18, 2007

_____
ALISE MALIKYAR

2

DECLARATION OF ALISE MALIKYAR IN SUPPORT OF PLAINTIFF ALISE MALIKYAR'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# EXHIBIT 1

## Pre-Nuptial Agreement
### Robert Jacobsen and Alise Malikyar

On this day we are getting married. Our property is to remain separate, including any property we acquire during this marriage. We will maintain separate checking accounts as well as a joint account. The joint account will be for paying the living expenses for things we are both using, such as the house payment, medical insurance, food and travel. The ownership of the Fleischmann Lane house will remain the sole property of Robert Jacobsen, and the money from the sale of Alise Malikyar's home in Concord, will both remain as each party's separate property. In fact, all property owned or ownership interest of any kind, ownership in a company, by either party will remain that party's sole and separate property. Any future Real Estate purchased by either party, by themselves, will remain that persons separate, even though payments and other expenses, are made from the joint account, or, either party's personal account. It doesn't matter how the expenses are paid, in what proportion or by whom, the property remains as that party's separate property. The only thing that will determine ownership is the name it is taken in. It will be the same as taking the property as an unmarried person. Any money contributed to the purchase by anyone other than the party taking title, will have to be settled outside of the ownership of the property, f.e. may be treated as a loan to be paid back.

All earnings by either party, or anything purchased with these earnings, will remain the separate property of that party that earned the money.

With mutual agreement, the above parties can choose to purchase something as community property, but this must be spelled out in an agreement to do such. Without such an agreement the owner of record will be the sole owner and no community property state will exist.

This contract is only intended to be a temporary agreement, done without advise of an attorney. It is agreed that a more formal marital agreement will be drawn up by an attorney in the near future. This future agreement will clarify issues in this contract that may not be in formal legal language. A goal is to complete the new agreement within the next 24 months, but until a new contract is drawn up to replace this one, this informal agreement will describe our intentions and will remain in full force until a replacement contract is drawn up. It will remain in force even if the parties get a divorce or in the event of death of one, or, both of the parties. In the event of death, the estate of each party will be treated the same as if the parties were not married. Each party is to be responsible for their own will.

Income taxes may be done jointly, or individually. Doing taxes jointly does not change the above terms of this contract. If one or the other party lives in the other parity's house, it does not in any way change anything about ownership of the property. Liability for anything to do with the one party's house, does not spread to the other party.

If any part of this contract is determined to be invalid, the remainder of the contract will remain in force. The prevailing party in any legal dispute will be awarded attorney's fees and any other legal costs. This contract is drawn up in Nevada. Jurisdiction for any dispute to do with this contract will be heard in Carson City, Nevada, unless agreed by both parties to move to a different venue.

_____    July 17 1999
Robert Jacobsen

_____    July 17, 1999
Alise Malikyar

# EXHIBIT 2

# JACOBSEN AND MALIKYAR

# MARITAL AGREEMENT

# TABLE OF CONTENTS FOR
# JACOBSEN AND MKALIKYAR MARITAL AGREEMENT

**SECTION 1. NATURE OF THE MARITAL AGREEMENT** ...................... 1-1

    1.1 Identification of Parties .................................................................. 1-1

    1.2 No Separation or Dissolution Contemplated ................................ 1-1

    1.3 Purpose of Agreement ................................................................... 1-1

    1.4 Disclosures of Property and Financial Obligations ...................... 1-1

**SECTION 2. NATURE OF PROPERTY AFTER AGREEMENT** ............... 2-1

    2.1 All Property to be Separate Property ........................................... 2-1

    2.2 Joint Accounts And Other Community Property ........................ 2-1

    2.3 Debts .............................................................................................. 2-2

    2.4 Waivers of Spousal Support ......................................................... 2-2

    2.5 Income Tax Returns ...................................................................... 2-2

**SECTION 3. EFFECT OF GIFT OR DEATH** ............................................ 3-1

    3.1 Gifts Made to Parties Jointly ........................................................ 3-1

    3.2 Gifts And Other Transfers Between Parties ................................ 3-1

    3.3 Waivers of Joint And Survivor Annuities And Death Benefits ........... 3-1

    3.4 Waiver of Rights On Death of The Other Party .......................... 3-2

**SECTION 4. ADMINISTRATIVE PROVISIONS** .................................... 4-1



4.1 Execution, Acknowledgment, and Delivery of Documents ................... 4-1

4.2 Entire Agreement ........................................................................... 4-1

4.3 Binding Effect of Agreement ........................................................... 4-1

4.4 Amendment or Revocation By Subsequent Agreement ..................... 4-1

4.5 Governing Law ............................................................................... 4-1

4.6 Severability In Event of Partial Invalidity ........................................ 4-1

4.7 Future Attorney Fees And Costs ..................................................... 4-1

4.8 One Party Unrepresented By Counsel ............................................. 4-2

4.9 Effective Date of Agreement ........................................................... 4-3



## SECTION 1. NATURE OF THE MARITAL AGREEMENT.

1.1 <u>Identification of Parties</u>. This agreement is made between ROBERT JACOBSEN (also known as Robert Edwin Jacobsen and Robert E. Jacobsen), hereinafter referred to as "Husband," and ALISE MALIKYAR (also known as Alise Jacobsen), hereinafter referred to as "Wife."

1.2 <u>No Separation or Dissolution Contemplated</u>. The parties do not presently contemplate a separation or dissolution of marriage.

1.3 <u>Purpose of Agreement</u>. The purpose of this agreement is to define the parties' respective property rights. Specifically, it precludes the creation of any community property, except as it expressly provides. The parties intend by this agreement to change the characterization (as community or separate property) or ownership of property they own.

1.4 <u>Disclosures of Property and Financial Obligations</u>. The property in which husband and wife have an interest:

1.4.1 Exhibit A is a list of the property in which Husband has an interest with a value exceeding $500, along with the extent and value of each such interest, and of his financial obligations that exceed $500, along with the amount of each such financial obligation.

1.4.2 Exhibit B is a list of the property in which Wife has an interest with a value exceeding $500, along with the extent and value of each such interest, and of her financial obligations that exceed $500, along with the amount of each such financial obligation.

1.4.3 Each party has attempted to provide a reasonable, good faith disclosure of property and financial obligations in Exhibit A and B. The values presented there, however, are only approximate and may be considerably higher or

lower than the actual values. They are provided only to indicate values generally and are not intended to be relied on as exact indications.

End of Section 1

## SECTION 2. NATURE OF PROPERTY AFTER AGREEMENT.

2.1 <u>All Property to be Separate Property</u>. All property of either party will be or is entirely his or her separate property, except as provided in sections 2.2 and 3.1. The parties acknowledge that, as a result of this agreement, certain assets and interests that would otherwise have been the parties' community property, belonging equally to each of them, will be one party's separate property. These include, but are not limited to:

2.1.1 Earnings resulting from the efforts of either party during marriage and before separation;

2.1.2 Assets acquired with such earnings;

2.1.3 Increased values in separate property resulting from the application of such earnings, or from the efforts of either party, during marriage and before separation;

2.1.4 Certain assets of interests acquired by loan or extension of credit during marriage and before separation; and

2.1.5 Certain commingled funds.

2.2 <u>Joint Accounts And Other Community Property</u>. The parties will maintain at least one joint account in both their names, from which joint living expenses will be paid. "Joint living expenses" include, but are not limited to, food at home, household supplies, utilities, telephone, laundry and cleaning, joint entertainment, and joint gifts to third parties. The parties will contribute to such accounts the amounts needed for their joint expenses. Contributions will be equal.

2.2.1 Despite any other provision of this agreement, the following will be the parties' community property:

2-1

2.2.1.1 All amounts deposited into the joint accounts, including any increases in those amounts; and

2.2.1.2 Property may be acquired by either of the individuals herein, as separate property, funded by a withdrawal from the joint account. The property will remain as separate property of the party with a debt to the joint account.

2.3 <u>Debts</u>. Each debt existing as of the effective date of this agreement will be the separate debt of the party who incurred it. Each debt incurred on or after the effective date of this agreement, including credit cards, charge accounts, and other loans or extensions of credit, will be the separate debt of the party who incurred it unless the parties acquire the debt in their joint names.

2.4 <u>Income Tax Returns</u>. The parties will file joint federal and state income tax returns for tax years for which the parties agree to do so. If one party elects to file joint returns and the other does not, the second party will pay the first party the additional amount of income tax obligation incurred by the first party as a result of filing separate returns. For each tax return to be filed jointly, the proportion of the income tax obligation that that party would have had if the parties had not filed jointly, divided by the sum of the amounts of income tax obligation that the two parties would have had in that event. Once each party's respective share of the income tax obligation on any joint return is determined of any refund or payment of any amount owing and taking into account the parties' respective shares under law of any credits for income taxes withheld and estimated taxes paid, so that each party bears his or her respective share of the income tax obligation. The expense of preparation of the parties' joint federal and state income tax returns will be shared by the parties equally. "Income tax obligation" as used in this provision means the total income tax owed before any credits for taxes withheld or estimated taxes paid.

<u>End of Section 2</u>

## SECTION 3.  EFFECT OF GIFT OR DEATH.

3.1 <u>Gifts Made to Parties Jointly</u>. Despite any other provision of this agreement, gifts made to the parties jointly will be their community property.

3.2 <u>Gifts And Other Transfers Between Parties</u>. Any gift between the parties of clothing, wearing apparel, jewelry, or other tangible articles of a personal nature that is used solely or principally by the party to whom the gift is made and that has a value, at the time of the gift, of less than $1000 will be valid without requirement of a writing and will be the separate property of the recipient. Other gifts and transfers between the parties will be valid only if accompanied by an express declaration in writing that is made, joined in, consented to, or accepted by the party whose interest in the property is adversely affected.

3.3 <u>Waivers of Joint And Survivor Annuities And Death Benefits</u>. Each party understands that he or she may become entitled, under federal law or terms of the other's retirement plan, to receive a joint and survivor annuity or other death benefits under that plan on the other's death. Each party hereby waives all of his or her rights to such benefits; consents to the designation by the other party of any beneficiaries and to any subsequent change of beneficiaries without the waiving party's further waiver or consent; acknowledges his or her awareness that this waiver may result in his or her loss of joint and survivor annuity or other death benefits; and agrees to execute before a plan representative or notary public all necessary waivers and consents requested by the other party within the time periods specified by law for these waivers to be effective.

3.4 <u>Waiver of Rights On Death of The Other Party</u>. Each party hereby waives the right to receive any property or rights whatsoever on the death of the other, unless that right is created or affirmed by the other under a will or other

3-1

written document executed after the effective date of this agreement. Each party believes that he or she has received a fair and reasonable disclosure of the property and financial obligations of the other party. Each party's waiver is intended to be an enforceable waiver or that party's rights under California Probate Code sections 140-147. The rights waived include, but are not limited to, rights to any of the following:

    3.4.1 Property that would pass from the decedent by testamentary disposition;

    3.4.2 Property that would pass from the decedent by intestate succession;

    3.4.3 A probate homestead;

    3.4.4 The setting aside of exempt property;

    3.4.5 A family allowance;

    3.4.6 The setting aside of an estate;

    3.4.7 An election to take community or quasi-community property against decedent's will;

    3.4.8 The statutory share of an omitted spouse;

    3.4.9 An appointment as executor or administrator of the decedent's estate, except as the nominee of a third party legally entitled to make such nomination;

    3.4.10 Property that would pass from the decedent by non-probate transfer, such as survivorship interest under a joint tenancy, a Totten Trust account, or a pay-on-death account; and

    3.4.11 Proceeds as beneficiary of any type of insurance policy.

<u>End of Section 3</u>



## SECTION 4. ADMINISTRATIVE PROVISIONS.

4.1 <u>Execution, Acknowledgment, and Delivery of Documents</u>. In order to accomplish the intent of this agreement, each party will, at the other's request, execute, acknowledge, or deliver any instrument reasonably necessary to carry out the provisions of this agreement.

4.2 <u>Entire Agreement</u>. This agreement contains the entire agreement of the parties on these matters, superseding any previous agreement between them.

4.3 <u>Binding Effect of Agreement</u>. This agreement will inure to the benefit of, and be binding on, the parties' respective devisees, heirs, personal representatives, assigns, and successors in interest.

4.4 <u>Amendment or Revocation By Subsequent Agreement</u>. This agreement may be amended or revoked only by written agreement signed by the parties. The amended agreement or revocation will be enforceable without consideration.

4.5 <u>Governing Law</u>. This agreement will be governed by, and interpreted in accordance with, California law.

4.6 <u>Severability In Event of Partial Invalidity</u>. If any provision of this agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire agreement will be severable and remain in effect.

4.7 <u>Future Attorney Fees And Costs</u>. If either party reasonably retains counsel for purposes related to this

agreement, including, but not limited to, enforcing or preventing the breach of any provision, seeking damages for any alleged breach, and seeking a declaration of his or her rights or obligations under the agreement, and the matter is settled by a judicial determination, including arbitration, the prevailing party will be awarded reasonable attorney fees and costs.

  4.8 <u>One Party Unrepresented By Counsel</u>.  This agreement has been prepared by MAXIMILIAN J.B. HOPKINS, attorney for ROBERT JACOBSEN. ALISE MALIKYAR has not been represented in the negotiation or preparation of this agreement.  ALISE MALIKYAR acknowledges that ROBERT JACOBSEN'S attorney has informed her that the attorney represents only ROBERT JACOBSEN, that ALISE MALIKYAR has the right to obtain independent legal advice, and that ALISE MALIKYAR should do so, but that she has voluntarily declined to obtain such advice.  ALISE MALIKYAR further acknowledges that she has read this agreement in its entirety and voluntarily chooses to execute it.

  ///
  ///
  ///
  ///
  ///
  ///
  ///
  ///



4.9 <u>Effective Date of Agreement</u>. The effective date of this agreement will be the date of its execution by the second of the parties to do so.

<u>End of Section 4</u>

Dated: ~~June~~ September 11, 2001.

_____
Robert Jacobsen

Dated: ~~June~~ September 11, 2001.

_____
Alise Malikyar

## Schedule A

(Separate Property of Robert Jacobsen)

1. Tangible personal property
2. A loan to Alise Malikyar for portion of the down payment on the property, approximately $150,000.00 located at 2324 Tice Valley Blvd., Walnut Creek, CA
3. Solomon Smith Barney Account no 523-30273-16
4. Wells Fargo business checking no. 022-4320861
5. E*Trade Securities Account no 1018-6372
6. Any interest in REJ Properties, Inc.
7. All Real Estate ventures in Central America now actively engaged in by Robert Jacobsen.
8. Mortgage business in general.

_____  9/11/01
Robert Jacobsen          date

_____  9/11/01
Alise Malikyar           date

## Schedule B

(Separate Property of Alise Malikyar)

1. Tangible personal property; furniture and household things and jewelry owned before the marriage.
2. 2324 Tice Valley Blvd., Walnut Creek, CA
3. Wells Fargo personal checking solely in her name.

_____ 9/11/01
Robert Jacobsen        date

_____ 9/11/01
Alise Malikyar         date