1  **HAROLD M. JAFFE, ESQ.**
   CASB #57397
2  3521 Grand Avenue
   Oakland, CA 94610
3  Tel: (510) 452-2610
   Fax: (510) 452-9125
4
   Attorney for Defendants JOHN SRAMEK and BERNADETTE SRAMEK, individually and as
5  Trustees of the John S. Sramek, Jr. and Bernadette D. Sramek Revocable Living Trust and Harold
   M. Jaffe, In Pro Per
6
                           **UNITED STATES DISTRICT COURT**
7                          **NORTHERN DISTRICT OF CALIFORNIA**

8
   ALISE MALIKYAR,                          CASE NO. C07-03533 WHA
9
           Plaintiff,                       **REPLY DECLARATION OF HAROLD M.**
10                                          **JAFFE IN SUPPORT OF DEFENDANTS'**
   vs.                                      **MOTION FOR SUMMARY JUDGMENT**
11
   JOHN   SRAMEK,   BERNADETTE
12 SRAMEK, HAROLD M. JAFFE, John S.         **DATE:**    November 8, 2007
   Sramek, Jr. and Bernadette D. Sramek     **TIME:**    8:00 a.m.
13 Revocable Living Trust, and DOES 1 -     **CTRM:**    9 - **Hon. William Alsup**
   100,
14
           Defendants.
15 _____/

16         I, HAROLD M. JAFFE, declare:

17         1.     I am an attorney at law duly licensed to practice in all courts of the State of

18 California and am attorney of record for defendants, JOHN SRAMEK ("J. SRAMEK"),

19 BERNADETTE SRAMEK ("B. SRAMEK"), HAROLD M. JAFFE ("JAFFE"), in pro se, and John

20 S. Sramek, Jr. and Bernadette D. Sramek Revocable Living Trust ("the SRAMEK TRUST"), herein.

21         2.     The matters stated herein are within my own personal knowledge and if

22 called as a witness I could and would competently testify thereto.  Your declarant is making this

23 declaration in support of defendants' reply in support of their motion for summary judgment.

24         3.     On September 22, 2007, a Proof of Service, a true and correct copy of which

25 is attached hereto as **Exhibit A**, was served via fax on your declarant's office, concerning plaintiff's

26 opposition papers to defendants' motion for summary judgment.

27         4.     Attached hereto as **Group Exhibit B** are various Deeds of Trust, post-dating the

28 alleged September 11, 2001 Marital Agreement, which reflect loans to Jacobsen's wife, Alise

                                          1

1   Malikyar ("Malikyar") secured by real property located at 2324 Tice Valley Boulevard, Walnut

2   Creek, California (the "Tice Valley Property"), in which Malikyar represented that she was an

3   unmarried woman, and not a married woman holding title as her sole and separate property.

4          5.      Although the complaint in this matter states on its face that it was verified, no

5   verification was attached to the copy served on your declarant.

6          I declare under penalty of perjury that the foregoing is true and correct and this declaration

7   is executed on October 25, 2007, at Oakland, California.

8

9

10                                      _Harold M. Jaffe_
                                        HAROLD M. JAFFE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                                2

**PROOF OF SERVICE**

CASE NAME:    Alise Malikyar v. John Sramek et al.

CASE NO.:    07-03533 WHA

SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

    I am employed in the County of Contra Costa, State of California.  I am over the age of eighteen years and not a party to the within entitled action; my business address is 1655 N. Main St. Ste. 220, Walnut Creek, California 94596.

    On **October 22, 2007,** I caused to be served the foregoing documents described as:
**PLAINITFF ALISE MALIKYAR'S MEMORANDUM OR POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
[PROPOSED] ORDER DENYING THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DECLARATION OF ALISE MALIKYAR IN SUPPORT OF PLAINTIFF ALISE MALIKYAR'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
DECLARATION OF ROBERT JACOBSEN IN SUPPORT OF PLAINITFF ALISE MALIKYAR'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
on interested parties as follows:

Harold Jaffe
Attorney At Law
3521 Grand Avenue
Oakland, CA 94610

[X]    **(BY MAIL)**  By placing a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I deposited such envelope in the mail at Walnut Creek, California, with postage thereon fully prepaid. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day in the ordinary course of business. I am aware that on motion of party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

[ ]    **(BY PERSONAL DELIVERY)** By placing a true copy thereof enclosed in a sealed envelope(s) addressed as to the above-named counsel of record or parties in propria persona. I caused such envelope to be delivered to the addressee.

[ ]    **(BY FACSIMILE)**  I caused said document, along with a signed copy of this Declaration, to be transmitted to a facsimile machine telephone number as last given by said counsel or party in propria persona as noted above.

[X]    **(STATE)** I declare under penalty of perjury under the laws of the State of California that the forgoing is true and correct.

Dated: October 22, 2007

Jennifer Poceka

**EXHIBIT A**

Recording requested by:
Wells Fargo Bank, N. A.

Recording Requested by:
Wells Fargo Bank
When Recorded Return to: Fidelity National LPS
15661 Redhill, Suite 200
Tustin, CA 92780
Code: WFD

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2003-0011866-00

Check Number 30523661
Thursday, JAN 09, 2003 10:29:30
MIC    $1.00 MOD    $5.00 REC    $9.00
TCF    $4.00 DAF    $1.80 REF    $0.20

Ttl Pd  $21.00        Nbr-0001253729
                            cmb/R1/1-5

State of California ———————— Space Above This Line For Recording Data ————————
REFERENCE #: 20023407400391    ACCOUNT #: 0654-654-5507553-1998

## SHORT FORM DEED OF TRUST
### (With Future Advance Clause)

1.   **DATE AND PARTIES.** The date of this Short Form Deed of Trust ("Security Instrument") is
     12/20/2002   and the parties are as follows:
     TRUSTOR ("Grantor"):
     ALISE MALIKYAR, AN UNMARRIED WOMAN

     whose address is:
     2324 TICE VALLEY BLVD WALNUT CREEK, CA,  94595
     TRUSTEE:  **AMERICAN SECURITIES COMPANY**
              P. O. BOX 31557
              BILLINGS, MT 59107
     BENEFICIARY ("Lender"): Wells Fargo Bank, N. A.
              P. O. BOX 31557
              BILLINGS, MT 59107

2.   **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is
     acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this
     Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of
     Lender, with power of sale, all of that certain real property located in the County of
                      CONTRA COSTA ,State of California, described as follows:

     SEE ATTACHED EXHIBIT A

     with the address of  2324 TICE VALLEY BLVD  WALNUT CREEK, CA  94595
     and parcel number of 188-112-009-9                           together with all rights, easements,
     appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water
     stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any
     time in the future, be part of the real estate described above.

3.   **MAXIMUM OBLIGATION LIMIT AND SECURED DEBT.** The total amount which this Security
     Instrument will secure shall not exceed $ 93,000.00        together with all interest thereby accruing,
     as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of
     debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or
     other documents which are incorporated by reference into this Security Instrument, now or in the future. The
     maturity date of the Secured Debt is 12/20/2042 .

EQ206A (06/2002)



011866

EXHIBIT A

THE FOLLOWING DESCRIBED REAL PROPERTY LOCATED IN THE UNINCORPORATED AREA, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF THE RANCHO SAN RAMON, DESCRIBED AS FOLLOWS:

BEGINNING ON THE WEST LINE OF LOT 4 AS SHOWN ON THE MAP OF WALNUT CREEK PARK, FILED FEBRUARY 7, 1911, IN BOOK 1 OF MAPS, PAGE 84, IN THE OFFICE OF THE COUNTY RECORDER OF CONTRA COSTA COUNTY, AT THE NORTH LINE OF THE PARCEL OF LAND DESCRIBED AS PARCEL ONE IN THE DEED FROM H.W. HABERLAND, ET US, TO VICTOR MASSOLA, ET US, RECORDED MARCH 19, 1955 (FILE NO. 30583); THENCE ALONG THE WEST LINE OF SAID LOT 4 AS FOLLOWS:  NORTH 21 DEG. 56 MINUTES EAST, 119.44 FEET; NORTH 23 DEG. 08 MINUTES, 84.3 FEET AND NORTH 60 DEG. 11 MINUTES EAST, 16.33 FEET TO THE NORTH LINE OF THE 2 ACRE PARCEL OF LAND DESCRIBED IN THE DEED FROM KATE HENRY TO H.W. HABERLAND, ET US, RECORDED AUGUST 29, 1918, IN BOOK 319 OF DEEDS, PAGE 467; THENCE ALONG SAID NORTH LINE SOUTH 83 DEG. 53 MINUTES 07 SECONDS WEST, 210.07 FEET AND SOUTH 84 DEG. 08 MINUTES 25 SECONDS WEST, 41.35 FEET; THENCE SOUTH 5 DEG. 51 MINUTES 55 SECONDS EAST, 126.62 FEET; THENCE SOUTH 7 DEG. 03 MINUTES 05 SECONDS WEST, 52.9 FEET TO THE NORTH LINE OF SAID MASSOLA PARCEL (FILE NO. 30583); THENCE NORTH 86 DEG. 23 MINUTES 05 SECONDS EAST, ALONG SAID NORTH LINE, 175.11 FEET TO THE POINT OF BEGINNING.

PARCEL TWO:

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET US, RECORDED JUNE 6, 1955, BOOK 2547, OFFICIAL RECORDS, PAGE 366, AS FOLLOWS:

'A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS FOR WATER, GAS, OIL AND SEWER PIPELINES, AND FOR TELEPHONE, TELEVISION SERVICE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE NECESSARY POLES OR CONDUITS TO CARRY SAID LINES OVER A STRIP OF LAND 6 FEET IN WIDTH, THE EAST LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 6 IN THE CENTER LINE OF THE CREEK TRAVERSING THE WESTERLY LINE OF SAID SUBDIVISION AND BEING A CORNER COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION; THENCE FROM SAID POINT OF COMMENCEMENT ALONG THE CENTER LINE OF SAID CREEK AND ALONG THE WESTERLY LINE OF SAID LOT 4, NORTH 21 DEG. 56 MINUTES EAST, 10.66 FEET; THENCE SOUTH 86 DEG. 23 MINUTES 05 SECONDS WEST 175.11 FEET TO THE ACTUAL POINT OF BEGINNING OF THE HEREIN DESCRIBED EAST LINE; THENCE FROM SAID POINT OF BEGINNING, NORTH 7 DEG. 03 MINUTES 05 SECONDS EAST, 52.9 FEET.'

PARCEL THREE:

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, IT US, RECORDED JUNE 6, 1955, BOOK 2547, OFFICIAL RECORDS, PAGE 366, AS FOLLOWS:

'A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS FOR WATER, GAS, OIL AND SEWER PIPELINES, AND FOR TELEPHONE, TELEVISION SERVICE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE

011866

NECESSARY POLES OR CONDUITS TO CARRY SAID LINE OVER A STRIP OF LAND 12 FEET IN WIDTH, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 6 IN THE CENTER LINE OF THE CREEK TRAVERSING THE WESTERLY LINE OF SAID SUBDIVISION AND BEING A CORNER COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION; THENCE FROM SAID POINT OF COMMENCEMENT ALONG THE CENTER LINE OF SAID CREEK AND ALONG THE WESTERLY LINE OF SAID LOT 4, NORTH 21 DEG. 56 MINUTES EAST, 10.66 FEET; THENCE SOUTH 86 DEG. 23 MINUTES 05 SECONDS WEST 175.11 FEET TO THE ACTUAL POINT OF BEGINNING OF THE HEREIN DESCRIBED LINE; THENCE FROM SAID POINT OF BEGINNING, SOUTH 7 DEG. 03 MINUTES 05 SECONDS WEST, 90.69 FEET AND SOUTH 11 DEG. 00 MINUTES 10 SECONDS EAST, 119.12 FEET TO THE SOUTH LINE OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM WILLIAM E. HAMPTON, ET US, TO H.W. HABERLAND, ET US, RECORDED MAY 31, 1945, IN BOOK 600 OF OFFICIAL RECORDS, PAGE 306.'

PARCEL FOUR"

'THE RIGHT TO USE ANY BRIDGE OR BRIDGES NOW OR HEREAFTER LOCATED ON SAID PROPERTY, SAID RIGHT OF WAY TO BE USED IN CONJUNCTION WITH THE PARTIES OF THE SECOND PART, THEIR HEIRS OF ASSIGNS', AS RESERVED UNTO H.W. HABERLAND, ET US, IN THE DEED FROM SAID H.W. HABERLAND, ET UX, TO EDMUND G. HAMPTON, ET US, DATED OCTOBER 19, 1938, RECORDED NOVEMBER 3, 1937, IN BOOK 486, OF OFFICIAL RECORDS, PAGE 240.

PARCEL FIVE:

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET AL, RECORDED NOVEMBER 3, 1955, BOOK 2642, OFFICIAL RECORDS, PAGE 420, AS FOLLOWS:

'A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE, FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS, AND AS A RIGHT OF WAY FOR WATER, GAS, OIL AND SEWER PIPE LINES AND FOR TELEPHONE, ELECTRIC LIGHT AND POWER LINES TOGETHER WITH THE NECESSARY POLES OR UNDERGROUND CONDUITS TO CARRY SAID LINES OVER AND UNDER A STRIP OF LAND 12 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHERN TERMINUS OF THE CENTER LINE OF PARCEL THREE ABOVE; THENCE SOUTH 16 DEGREES 46 MINUTES 24 SECONDS EAST, 55.08 FEET, SOUTH 16 DEGREES 47 MINUTES 26 SECONDS, EAST, 58.29 FEET, SOUTH 26 DEG 18 MINUTES 21 SECONDS EAST, 93.22 FEET, SOUTH 19 DEG 38 MINUTES 21 SECONDS EAST 53.10 FEET, SOUTH 4 DEG. 31 MINUTES 10 SECONDS WEST, 143.64 FEET AND SOUTH 27 DEG. 20 MINUTES EAST, 75.17 FEET TO THE CENTER LINE OF RIDGE ROAD, ALSO KNOWN AS TICE VALLEY BOULEVARD.

THE EASTERN AND WESTERN LINES THEREOF TO BE LENGTHENED OR SHORTENED TO EXTEND FROM THE EXTERIOR LINES OF SAID PARCEL THREE TO THE CENTER LINE OF RIDGE ROAD.

011866

4. **FICTITIOUS DEED OF TRUST.** By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Fictitious Deed of Trust, inclusive, dated **February 1, 1997** and recorded on February 6, 1997 as Instrument Number 97 020482 in Book N/A at Page N/A of the Official Records in the Office of the Recorder of CONTRA COSTA County, State of California, are hereby incorporated into, and shall govern, this Security Instrument.

5. **RIDERS.** If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

   N/A Third Party Rider
   N/A Leasehold Rider
   N/A Other _____

**SIGNATURES:** By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument. Grantor also acknowledges receipt of a copy of this document and a copy of the provisions contained in the previously recorded Fictitious Deed of Trust (the Deed of Trust-Bank/Customer Copy). The undersigned Grantor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE hereunder be mailed to the Grantor's address given herein.

| | | |
|---|---|---|
| _Alise Malikyar_ | | _12/21/02_ |
| ALISE MALIKYAR | Grantor | Date |
| _____ | _____ | _____ |
| | Grantor | Date |
| _____ | _____ | _____ |
| | Grantor | Date |
| _____ | _____ | _____ |
| | Grantor | Date |
| _____ | _____ | _____ |
| | Grantor | Date |
| _____ | _____ | _____ |
| | Grantor | Date |

**ACKNOWLEDGMENT (All-Purpose):**
STATE OF ___CALIFORNIA___, COUNTY OF ___CONTRA COSTA___ } ss.
On ___DEC. 21, 2002___ before me, the undersigned, a Notary Public in and for said State, personally appeared ___ALISE MALIKYAR___

☐ personally known to me   -OR-   ☑ proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

Signature: _Michael R. Pardo_
Name: _MICHAEL R. PARDO_
      (type or printed)
My Commission expires: _July 2, 2004_

MICHAEL R. PARDO
Commission # 1269705
Notary Public - California
Contra Costa County
My Comm. Expires Jul 2, 2004

EQ206B (06/2002)

011866

## GOVERNMENT CODE 27361.7

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:**

Name of
Notary:        **MICHAEL R. PARDO**

Notary Commission
Number:        **1269705**

County and State
Of Commission:    **CONTRA COSTA**                                    **County, California**

Date Commission
Expires:        **July 2, 2004**

Manufacturer or Vendor Number:        **NNA1**
(Located on both sides of notary seal border)

Date and Place of
Notary Execution:    **December 21, 2002**    **CONTRA COSTA**    **County, California**

Signature: _April Chong Smith_                **WELLS FARGO BANK, N.A.**
        April Chong Smith

Date & Place of
This Execution:    **December 27, 2002**            **Washington County, OR**

**END OF DOCUMENT**

REV 7-17-01

RETURN TO:

## C/O ALLIANCE

```
CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC- 2002-0493100-00
Acct 15- Alliance Title Company
Tuesday, DEC 24, 2002 08:00:00
MIC    $1.00:MOD    $1.00:REC    $5.00
TCF    $0.00:               ;
Ttl Pd    $7.00       Nbr-0001227446
                           dar/R2/1-1
```

---

## DOCUMENT TITLE

BLANK PAGE

THIS BLANK PAGE IS RECORDED AT THE REQUEST OF

## ALLIANCE TITLE COMPANY

Recording requested by:
WELLS FARGO BANK, N.A.

Recording Requested by:
Wells Fargo Bank
When Recorded Return to: Fidelity National LPS
2520 N. Redhill Ave. Suite 120
Santa Ana, CA 92705
Code: WFD



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC-- 2001-0092635-00

Check Number
Thursday, APR 12, 2001 14:19:21
MIC    $1.00 MOD    $4.00 REC    $6.00
TCF    $3.00 DAF    $1.00 REF    $0.20

Ttl Pd    $16.00    Nbr-0000319950
                                ima/R4/1-4

———————— State of California ———————— Space Above This Line For Recording Data ————

REFERENCE#: 200107326C0028 ACCOUNT#: 0651 65*-0839728-000:

## SHORT FORM DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Short Form Deed of Trust ("Security Instrument") is 03/27/200* and the parties are as follows:
   TRUSTOR ("Grantor"):

   AL SE WAL,KVAR, AN UNMARRIED WOMAN

   whose address is:
   2324 TICE VALEY BLVD WALNUT CREEK, CA 945952618
   TRUSTEE:    **AMERICAN SECURITIES COMPANY**
   P. O. Box 5140
   Portland, OR 97208-5140
   BENEFICIARY ("Lender"):    **WELLS FARGO BANK, N.A.**
   P. O. Box 5140
   Portland, OR 97208-5140

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument. Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, all of that certain real property located in the County of
   CONTRA COSTA ,State of California, described as follows:

   SEE ATTACHED EXHIBIT A

   with the address of  2324 TICE VALLEY BLVD  WALNUT CREEK, CA  94595
   and parcel number of  188-112-009-9         together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above.

3. **MAXIMUM OBLIGATION LIMIT AND SECURED DEBT.** The total amount which this Security Instrument will secure shall not exceed $50,000.00         together with all interest thereby accruing, as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or other documents which are incorporated by reference into this Security Instrument, now or in the future. The maturity date of the Secured Debt is 03/27/2031

EQ206A (10/2000)

**Exhibit A**

Acaps: 20010732600028

THE FOLLOWING DESCRIBED REAL PROPERTY LOCATED IN THE CITY OF WALNUT
CREEK, COUNTY OF CONTRA COSTA, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

PARCEL ONE:

PORTION OF THE RANCHO SAN RAMON, DESCRIBED AS FOLLOWS:

BEGINNING ON THE WEST LINE OF LOT 4 AS SHOWN ON THE MAP OF WALNUT CREEK
PARK, FILED FEBRUARY 7, 1911, IN BOOK 1 OF MAPS, PAGE 84. IN THE OFFICE
OF THE COUNTY RECORDER OF CONTRA COSTA COUNTY, AT THE NORTH LINE OF THE
PARCEL OF LAND DESCRIBED AS PARCEL ONE IN THE DEED FROM H.W. HABERLAND,
ET UX, TO VICTOR MASSOLA, ET UX, RECORDED MARCH 19, 1955 (FILE NO.
30583); THENCE ALONG THE WEST LINE OF SAID LOT 4 AS FOLLOWS:

NORTH 21 DEG. 56 MINUTES EAST, 119.44 FEET; NORTH 23 DEG. 08 MINUTES
EAST, 84.3 FEET AND NORTH 60 DEG. 11 MINUTES EAST, 16.33 FEET TO THE
NORTH LINE OF THE 2 ACRE PARCEL OF LAND DESCRIBED IN THE DEED FROM KATE
HENRY TO H.W. HABERLAND, ET UX, RECORDED AUGUST 29, 1918, IN BOOK 319 OF
DEEDS, PAGE 467; THENCE ALONG SAID NORTH LINE SOUTH 83 DEG. 53 MINUTES 07
SECONDS WEST, 210.07 FEET AND SOUTH 84 DEG. 08 MINUTES 25 SECONDS WEST
41.35 FEET; THENCE SOUTH 5 DEG. 51 MINUTES 55 SECONDS EAST, 126.62 FEET;
THENCE SOUTH 7 DEG. 03 MINUTES 05 SECONDS WEST, 52.9 FEET TO THE NORTH
LINE OF SAID MASSOLA PARCEL (FILE NO. 30583); THENCE NORTH 86 DEG. 23
MINUTES 05 SECONDS EAST, ALONG SAID NORTH LINE, 175.11 FEET TO THE POINT
OF BEGINNING.

PARCEL TWO:

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET UX,
RECORDED JUNE 6, 1955, BOOK 2547, OFFICIAL RECORDS, PAGE 366, AS FOLLOWS:

'A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE
ABOVE FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND
ANIMALS FOR WATER, GAS, OIL AND SEWER PIPE LINES, AND FOR TELEPHONE,
TELEVISION SERVICE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE
NECESSARY POLES OR CONDUITS TO CARRY SAID LINES OVER A STRIP OF LAND 6
FEET IN WIDTH, THE EAST LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 6 IN THE CENTER LINE OF
THE CREEK TRAVERSING THE WESTERLY LINE OF SAID SUBDIVISION AND BEING A
CORNER COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION; THENCE FROM SAID POINT
OF COMMENCEMENT ALONG THE CENTER LINE OF SAID CREEK AND ALONG THE
WESTERLY LINE OF SAID LOT 4, NORTH 21 DEG. 56 MINUTES EAST, 10.66 FEET;
THENCE SOUTH 86 DEG. 23 MINUTES 05 SECONDS WEST 175.11 FEET TO THE ACTUAL
POINT OF BEGINNING OF THE HEREIN DESCRIBED EAST LINE; THENCE FROM SAID
POINT OF BEGINNING, NORTH 7 DEG. 03 MINUTES 05 SECONDS EAST, 52.9 FEET.'

PARCEL THREE:

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET UX,
RECORDED JUNE 6, 1955, BOOK 2547, OFFICIAL RECORDS, PAGE 366, AS FOLLOWS:

926635

'A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE, FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS, FOR WATER, GAS, OIL AND SEWER PIPE LINES, AND FOR TELEPHONE, TELEVISION SERVICE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE NECESSARY POLES OR CONDUITS TO CARRY SAID LINE OVER A STRIP OF LAND 12 FEET IN WIDTH, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 6 IN THE CENTER LINE OF THE CREEK TRAVERSING THE WESTERLY LINE OF SAID SUBDIVISION AND BEING A CORNER COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION; THENCE FROM SAID POINT OF COMMENCEMENT ALONG THE CENTER LINE OF SAID CREEK AND ALONG THE WESTERLY LINE OF SAID LOT 4, NORTH 21 DEG. 56 MINUTES EAST, 10.66 FEET; THENCE SOUTH 86 DEG. 23 MINUTES 05 SECONDS WEST, 175.11 FEET TO THE ACTUAL POINT OF BEGINNING OF THE HEREIN DESCRIBED EAST LINE; THENCE FROM SAID POINT OF BEGINNING, SOUTH 7 DEG. 03 MINUTES 05 SECONDS WEST, 90.69 FEET AND SOUTH 11 DEG. 00 MINUTES 10 SECONDS EAST, 119.12 FEET TO THE SOUTH LINE OF THE PARCEL OF LAND DESCRIBED IN THE DEED FROM WILLIAM E. HAMPTON, ET UX, TO H.W. HABERLAND, ET UX, RECORDED MAY 31, 1945, IN BOOK 600 OF OFFICIAL RECORDS, PAGE 306.'

PARCEL FOUR:

'THE RIGHT TO USE ANY BRIDGE OR BRIDGES NOW OR HEREAFTER LOCATED ON SAID PROPERTY, SAID RIGHT OF WAY TO BE USED IN CONJUNCTION WITH THE PARTIES OF THE SECOND PART, THEIR HEIRS OR ASSIGNS', AS RESERVED UNTO H.W. HABERLAND, ET UX, IN THE DEED FROM SAID H.W. HABERLAND, ET UX, TO EDMUND G. HAMPTON, ET UX, DATED OCTOBER 19, 1938, RECORDED NOVEMBER 3, 1937, IN BOOK 486, OF OFFICIAL RECORDS, PAGE 240.

PARCEL FIVE:

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET AL., RECORDED NOVEMBER 3, 1955, BOOK 2642, OFFICIAL RECORDS, PAGE 420, AS FOLLOWS:

'A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE, FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS, AND AS A RIGHT OF WAY FOR WATER, GAS, OIL AND SEWER PIPE LINES AND FOR TELEPHONE, ELECTRIC LIGHT AND POWER LINES TOGETHER WITH THE NECESSARY POLES OR UNDERGROUND CONDUITS TO CARRY SAID LINES OVER AND UNDER A STRIP OF LAND 12 FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHERN TERMINUS OF THE CENTER LINE OF PARCEL THREE ABOVE; THENCE SOUTH 16 DEG. 46 MINUTES 24 SECONDS EAST, 55.08 FEET, SOUTH 16 DEG. 47 MINUTES 26 SECONDS EAST, 58.29 FEET, SOUTH 26 DEG. 18 MINUTES 21 SECONDS EAST, 93.22 FEET, SOUTH 19 DEG. 38 MINUTES 21 SECONDS EAST, 53.10 FEET, SOUTH 4 DEG. 31 MINUTES 10 SECONDS WEST, 143.64 FEET AND SOUTH 27 DEG. 20 MINUTES EAST, 75.17 FEET TO THE CENTER LINE OF RIDGE ROAD, ALSO KNOWN AS TICE VALLEY BOULEVARD.

THE EASTERN AND WESTERN LINES THEREOF TO BE LENGTHENED OR SHORTENED TO EXTEND FROM THE EXTERIOR LINES OF SAID PARCEL THREE TO THE CENTER LINE OF RIDGE ROAD.'

92635

4. **FICTITIOUS DEED OF TRUST.** By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Fictitious Deed of Trust, inclusive, dated February 1, 1997 and recorded on February 6, 1997      as Instrument Number 97 020482         in Book    N/A             at Page N/A      of the Official Records in the Office of the Recorder of CONTRA COSTA          County, State of California, are hereby incorporated into, and shall govern, this Security Instrument.

**SIGNATURES:** By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument. Grantor also acknowledges receipt of a copy of this document and a copy of the provisions contained in the previously recorded Fictitious Deed of Trust (the Deed of Trust-Bank/Customer Copy). The undersigned Grantor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE hereunder be mailed to the Grantor's address given herein.

_____                                              3/27/01
AL SF MAL KYAR                                        Grantor                 Date

_____                      _____
                                                     Grantor                 Date

_____                      _____
                                                     Grantor                 Date

_____                      _____
                                                     Grantor                 Date

**ACKNOWLEDGMENT** (All-Purpose):
STATE OF _CALIFORNIA_ , COUNTY OF _CONTRA COSTA_ } ss.
On _3/27/2001_ before me, the undersigned, a Notary Public in and for said State, personally appeared _ALISE MALIKYAR_

☐ personally known to me          -OR-      ☒ proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument WITNESS my hand and official seal.

Signature: _Kristine C Bonfil_

Name: _KRISTINE R. BONFIL_
          (type or printed)
My Commission expires: _Jan. 24, 2002_

KRISTINE R. BONFIL
COMM. # 1169442
NOTARY PUBLIC-CALIFORNIA
CONTRA COSTA COUNTY
COMM. EXP JAN 24, 2002
(Seal)

**ACKNOWLEDGMENT** (All-Purpose):
STATE OF_____, COUNTY OF _____ } ss.
On _____ before me, the undersigned, a Notary Public in and for said State, personally appeared _____

☐ personally known to me          -OR-      ☐ proved to me on the basis of satisfactory evidence/ to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. WITNESS my hand and official seal.

Signature: _____

Name: _____
          (type or printed)
My Commission expires: _____                    (Seal)

EQ206B (10/2000)

**END OF DOCUMENT**

**Recording requested by:**
Wells Fargo Bank, N.A.

When recorded return to:
Wells Fargo Bank, N.A.
P. O. BOX 31557
BILLINGS, MT 59107

Attn: DOCUMENT MANAGEMENT



CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
**DOC- 2005-0184481-00**

Check Number
Monday, MAY 23, 2005 14:46:47
MIC     $1.00 MOD    $5.00 REC    $9.00
TCF     $4.00 DAF    $1.80 REF    $0.20
**Ttl Pd    $21.00**    Nbr-0002709664
                         dar/R7/1-5

---

State of California                Space Above This Line For Recording Data
REFERENCE #: 20051197400458    ACCOUNT #: 0651-651-8119929-1998

# SHORT FORM DEED OF TRUST
### (With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Short Form Deed of Trust ("Security Instrument") is 04/29/2005 and the parties are as follows:
TRUSTOR ("Grantor"):
ALISE MALIKYAR, AN UNMARRIED WOMAN

whose address is:
2324 TICE VALLEY BLVD WALNUT CREEK, CA, 94595
TRUSTEE:  **AMERICAN SECURITIES COMPANY**
          P. O. BOX 31557
          BILLINGS, MT 59107
BENEFICIARY ("Lender"):  **WELLS FARGO BANK, N.A.**
                         P. O. BOX 31557
                         BILLINGS, MT 59107

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, all of that certain real property located in the County of
CONTRA COSTA                    , State of California, described as follows:
SEE ATTACHED EXHIBIT

with the address of 2324 TICE VALLEY BLVD  WALNUT CREEK, CA  945952618
and parcel number of 188-112-009-9                together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above.

EQ206A (09/2004)

184481

# Exhibit A

Reference #: 20051197400458
Acct #: 0651-651-8119929-1998

PARCEL ONE: PORTION OF THE RANCHO SAN RAMON, DESCRIBED AS FOLLOWS:
BEGINNING ON THE WEST LINE OF LOT 4 AS SHOWN ON THE MAP OF WALNUT CREEK
PARK, FILED FEBRUARY 7, 1911, IN BOOK 1 OF MAPS, PAGE 84, IN THE OFFICE OF
THE COUNTY RECORDER OF CONTRA COSTA COUNTY, AT THE NORTH LINE OF THE
PARCEL OF LAND DESCRIBED AS PARCEL ONE IN THE DEED FROM H. W. HABERLAND,
ET UX, TO VICTOR MASSOLA, ET UX, RECORDED MARCH 19, 1955 (FILE NO. 30583);
THENCE ALONG THE WEST LINE OF SAID LOT 4 AS FOLLOWS: NORTH 21  56  EAST,
119.44 FEET; NORTH 23 08  EAST, 84.3 FEET AND NORTH 60  11  EAST, 16.33
FEET TO THE NORTH LINE OF THE 2 ACRE PARCEL OF LAND DESCRIBED IN THE DEED
FROM KATE HENRY TO H. W. HABERLAND, ET UX, RECORDED AUGUST 29, 1918, IN
BOOK 319 OF DEEDS, PAGE 467; THENCE ALONG SAID NORTH LINE SOUTH 83 DEGREES
53 MINUTES 07 SECONDS WEST, 210.07 FEET AND SOUTH 84 DEGREES 08 MINUTES 25
SECONDS WEST, 41.35 FEET; THENCE SOUTH 5 DEGREES 51 MINUTES 55 SECONDS
EAST, 126.62 FEET; THENCE SOUTH 7 DEGREES 03 MINUTES 05 SECONDS WEST, 52.9
FEET TO THE NORTH LINE OF SAID MASSOLA PARCEL (FILE NO. 30583); THENCE
NORTH 86 DEGREES 23 MINUTES 05 SECONDS EAST, ALONG SAID NORTH LINE, 175.11
FEET TO THE POINT OF BEGINNING. PARCEL TWO: RIGHT OF WAY GRANTED IN THE
DEED TO WALTER CLARENCE HABERLAND, ET UX, RECORDED JUNE 6, 1955, BOOK
2547, OFFICIAL RECORDS, PAGE 366, AS FOLLOWS: A RIGHT OF WAY (NOT TO BE
EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE FOR USE AS A ROADWAY FOR
VEHICLES OF ALL KINDS, PEDESTRIANS AND ANI- MALS, AND FOR WATER, GAS, OIL
AND SEWER PIPE LINES, AND FOR TELEPHONE, TELE- VISION SERVICE, ELECTRIC
LIGHT AND POWER LINES, TOGETHER WITH THE NECESSARY POLES OR CONDUITS TO
CARRY SAID LINES OVER A STRIP OF LAND 6 FEET IN WIDTH, THE EAST LINE OF
WHICH IS DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHWEST CORNER OF SAID
LOT 6 IN THE CENTER LINE OF THE CREEK TRAVERSING THE WESTERLY LINE OF SAID
SUBDIVISION AND BEING A CORNER COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION;
THENCE FROM SAID POINT OF COM- MENCEMENT ALONG THE CENTER LINE OF SAID
CREEK AND ALONG THE WESTERLY LINE OF SAID LOT 4, NORTH 21  56  EAST, 10.66
FEET; THENCE SOUTH 86 DEGREES 23 MINUTES 05 SECONDS WEST 175.11 FEET TO
THE ACTUAL POINT OF BEGINNING OF THE HEREIN DESCRIBED EAST LINE; THENCE
FROM SAID POINT OF BEGINNING, NORTH 7 DEGREES 03 MINUTES 05 SECONDS EAST,
52.9 FEET. PARCEL THREE: RIGHT OF WAY GRANTED IN THE DEED TO WALTER
CLARENCE HABERLAND, ET UX, RECORDED JUNE 6, 1955, BOOK 2547, OFFICIAL
RECORDS, PAGE 366, AS FOLLOWS: A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN
APPURTENANCE TO PARCEL ONE ABOVE, FOR USE AS A ROADWAY FOR VEHICLES OF ALL
KINDS, PEDESTRIANS AND ANI- MALS, FOR WATER, GAS, OIL AND SEWER PIPE
LINES, AND FOR TELEPHONE, TELEVI- SION SERVICE, ELECTRIC LIGHT AND POWER
LINES, TOGETHER WITH THE NECESSARY POLES OR CONDUITS TO CARRY SAID LINE
OVER A STRIP OF LAND 12 FEET IN WIDTH, THE CENTER LINE OF WHICH IS
DESCRIBED AS FOLLOWS: COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 6 IN
THE CENTER LINE OF THE CREEK TRAVERSING THE WESTERLY LINE OF SAID
SUBDIVISION AND BEING A CORNER COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION;
THENCE FROM SAID POINT OF COM- MENCEMENT ALONG THE CENTER LINE OF SAID
CREEK AND ALONG THE WESTERLY LINE OF SAID LOT 4, NORTH 21  56  EAST, 10.66
FEET; THENCE SOUTH 86 DEGREES 23 MINUTES 05 SECONDS WEST, 175.11 FEET TO
THE ACTUAL POINT OF BEGINNING OF THE HEREIN DESCRIBED LINE; THENCE FROM
SAID POINT OF BEGINNING, SOUTH 7 DEGREES 03 MINUTES 05 SECONDS WEST, 90.69
FEET AND SOUTH 11 DEGREES 00 MINUTES 10 SECONDS EAST, 119.12 FEET TO THE
SOUTH LINE OF THE PAR- CEL OF LAND DESCRIBED IN THE DEED FROM WILLIAM E.
HAMPTON, ET UX, TO H. W. HABERLAND, ET UX, RECORDED MAY 31, 1945, IN BOOK
600 OF OFFICIAL RECORDS, PARCEL FOUR:

184481

3. **MAXIMUM OBLIGATION LIMIT AND SECURED DEBT.** The total amount which this Security Instrument will secure shall not exceed $ 100,000.00    together with all interest thereby accruing, as set forth in the promissory note, revolving line of credit agreement, contract, guaranty or other evidence of debt ("Secured Debt") of even date herewith, and all amendments, extensions, modifications, renewals or other documents which are incorporated by reference into this Security Instrument, now or in the future. The maturity date of the Secured Debt is 04/29/2046 .

4. **FICTITIOUS DEED OF TRUST.** By the delivery and execution of this Security Instrument, Grantor agrees that all provisions and sections of the Fictitious Deed of Trust, inclusive, dated **February 1, 1997** and recorded on February 6, 1997    as Instrument Number 97 020482    in Book N/A    at Page N/A    of the Official Records in the Office of the Recorder of CONTRA COSTA    County, State of California, are hereby incorporated into, and shall govern, this Security Instrument.

5. **RIDERS.** If checked, the following are applicable to this Security Instrument. The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.

    [N/A] Third Party Rider
    [N/A] Leasehold Rider
    [N/A] Other N/A _____

**SIGNATURES:** By signing below, Grantor agrees to perform all covenants and duties as set forth in this Security Instrument. Grantor also acknowledges receipt of a copy of this document and a copy of the provisions contained in the previously recorded Fictitious Deed of Trust (the Deed of Trust-Bank/Customer Copy). The undersigned Grantor requests that a copy of ANY NOTICE OF DEFAULT AND ANY NOTICE OF SALE hereunder be mailed to the Grantor's address given herein.

_____                             5/4/05
ALISE MALIKYAR                     Grantor          Date

_____                 _____
                                     Grantor          Date

_____                 _____
                                     Grantor          Date

_____                 _____
                                     Grantor          Date

_____                 _____
                                     Grantor          Date

_____                 _____
                                     Grantor          Date

EQ206B (09/2004)

184481

**ACKNOWLEDGMENT (All-Purpose):**
STATE OF ___Califorina___, COUNTY OF ___Contra Costa___ } ss.
On ___May 4, 2005___ before me, the undersigned, a Notary Public in and for said State,
personally appeared ___Alse Malikyar___

☐ personally known to me    **-OR-**    ☒ proved to me on the basis of satisfactory evidence/ to
be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on
the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature: _____
Name: ___Mona Lee___
         (type or printed)
My Commission expires: ___September 26, 2008___          (Seal)



MONA LEE
COMM. #1515747
NOTARY PUBLIC - CALIFORNIA
CONTRA COSTA COUNTY
My Comm. Expires Sept 26, 2008

EQ206C (09/2004)

## GOVERNMENT CODE 27361.7

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE
DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

Name of
Notary: _Mona Lee_

Notary Commission
Number: _1515747_

County and State
Of Commission: _Contra Costa_ _____ **County, California**

Date Commission
Expires: _09-26-08_

Manufacturer or Vendor Number: _QBP1_
(Located on both sides of notary seal border)

Date and Place of
Notary Execution: _05-04-2005 Contra Costa_ County, California

Signature: _Anna Heredia_           **WELLS     FARGO**
BANK, N.A.           ANNA HEREDIA

Date & Place of
This Execution _05-06-05_           **END OF DOCUMENT**
                        Washington County, OR

Recording Requested By

GreenPoint Mortgage Funding, Inc
*[Company Name]*

And When Recorded Mail To

GreenPoint Mortgage Funding, Inc
*[Company Name]*

*[Name of Natural Person]*

981 Airway Court, Suite E
*[Street Address]*

Santa Rosa, CA, 95403-2049
*[City, State Zip Code]*

#543 00227

North American Title Co.

CONTRA COSTA Co Recorder Office
STEPHEN L. WEIR, Clerk-Recorder
DOC— 2004-0425691-00
Acct 9— North American Title
Friday, NOV 05, 2004 08 00 00
MIC    $1 00 MOD    $17 00 REC    $21 00
TCF    $16 00 DAF    $1 80 REF    $0 20
Ttl Pd    $57.00    Nbr-0002415123
ENG/R2/1-17

*[Space Above This Line For Recording Data]*

Loan Number  0085244903

# DEED OF TRUST

MIN  100013800852449038

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

**(A)**    "Security Instrument" means this document, which is dated **October 15, 2004,** together with all Riders to this document

**(B)**    "Borrower" is **Alise Malikyar, An Unmarried Woman**
Borrower is the trustor under this Security Instrument

**(C)**    "Lender" is **GreenPoint Mortgage Funding, Inc**
Lender is a Corporation organized and existing under the laws of the State of New York  Lender's address is **100 Wood Hollow Drive, Novato, CA 94945**

**(D)**    "Trustee" is **Marin Conveyancing Corp**

**(E)**    "MERS" is Mortgage Electronic Registration Systems, Inc  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns  MERS is the beneficiary under this Security Instrument  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P O Box 2026, Flint, MI 48501-2026, tel  (888) 679-MERS

**(F)**    "Note" means the promissory note signed by Borrower and dated **October 15, 2004**  The Note states that Borrower owes Lender **Seven Hundred Forty Six Thousand Two Hundred Fifty  and 00/100ths Dollars (U S  $746,250 00)** *plus* interest  Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **November 1, 2034**

(G)    "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property "

(H)    "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest

(I)    "**Riders**" means all Riders to this Security Instrument that are executed by Borrower  The following Riders are to be executed by Borrower *[check box as applicable]*

☒ Adjustable Rate Rider        ☐ Condominium Rider              ☐ Second Home Rider
☐ Balloon Rider                    ☐ Planned Unit Development Rider   ☐ Biweekly Payment Rider
☐ 1-4 Family Rider                ☐ Revocable Trust Rider
☐ Other(s) *[specify]*

(J)    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions

(K)    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization

(L)    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers

(M)    "**Escrow Items**" means those items that are described in Section 3

(N)    "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i) damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property

(O)    "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan

(P)    "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument

(Q)    "**RESPA**" means the Real Estate Settlement Procedures Act (12 U S C §2601 et seq ) and its implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(R)    "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS  This Security Instrument secures to Lender  (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **County** of **Contra Costa**

[Type of Recording Jurisdiction]            [Name of Recording Jurisdiction]

**As more particularly described in exhibit "A"attached hereto and made a part hereof**

Assessor's Identification Number    188-112-009

which currently has the address of **2324 Tice Valley BLVD**

[Street]

**Walnut Creek**                    , California **94595**                    ("Property Address")

[City]                        [Zip Code]

        TOGETHER  WITH  all  the  improvements  now  or  hereafter  erected  on  the  property,  and  all  easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this Security Instrument as the "Property"  Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument

        BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record  Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record

        THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property

        UNIFORM COVENANTS  Borrower and Lender covenant and agree as follows
        1    **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S  currency  However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided



G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15  Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

2    Application of Payments or Proceeds  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3    Funds for Escrow Items  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow Items"  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

4    **Charges, Liens**  Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5    **Property Insurance**  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance   Lender shall have the right to hold the policies and renewal certificates   If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices   If Borrower *obtains any form of* insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender   Lender may make proof of loss if not made promptly by Borrower   Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened   During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds   Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower   If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower   Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters   If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered *to settle* a claim, then Lender may negotiate and settle the claim   The 30-day period will begin when the notice is given   In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property   Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6    Occupancy   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7    Preservation, Maintenance and Protection of the Property, Inspections   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property   Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition   Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage   If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes   Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed   If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property   If it has reasonable cause, Lender may inspect the interior of the improvements on the Property   Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8    Borrower's Loan Application   Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in

G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

connection with the Loan  Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9  **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property  Lender's actions can include, but are not limited to  (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding  Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off  Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so  It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease  If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

10  **Mortgage Insurance**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect  If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender  If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect  Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance  Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve  Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance  If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed  Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses  If such agreement provides that an affiliate of Lender takes a share of the



G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

    **(a)** Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund

    **(b)** Any such agreements will not affect the rights Borrower has -- if any -- with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination

    11  Assignment of Miscellaneous Proceeds, Forfeiture  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

    If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

    In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower

    In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

    If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

    Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

    All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

**12  Borrower Not Released, Forbearance By Lender Not a Waiver**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13  Joint and Several Liability, Co-signers, Successors and Assigns Bound**  Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer")  (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14  Loan Charges**  Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15  Notices**  All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

**16  Governing Law, Severability, Rules of Construction**  This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located  All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law  Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against

425691

agreement by contract  In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument  (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

17  **Borrower's Copy**  Borrower shall be given one copy of the Note and of this Security Instrument

18  **Transfer of the Property or a Beneficial Interest in Borrower**  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

19  **Borrower's Right to Reinstate After Acceleration**  If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of  (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument  Those conditions are that Borrower  (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged  Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred  However, this right to reinstate shall not apply in the case of acceleration under Section 18

20  **Sale of Note, Change of Loan Servicer, Notice of Grievance**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action  If Applicable Law provides a time period, which must elapse before certain action can be taken, that time

425691

period will be deemed to be reasonable for purposes of this paragraph  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

    21  Hazardous Substances  As used in this Section 21  (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

    Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

    Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law  Nothing herein shall create any obligation on Lender for an Environmental Cleanup

    NON-UNIFORM COVENANTS  Borrower and Lender further covenant and agree as follows

    22  Acceleration, Remedies  Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise)  The notice shall specify  (a) the default, (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property  The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale  If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence

    If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold  Trustee shall cause this notice to be recorded in each county in which any part of the Property is located  Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law  Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law  After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines  Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale  Lender or its designee may purchase the Property at any sale

    Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied  The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein  Trustee shall apply the proceeds of the sale in the following order  (a) to all expenses of the

---



G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

sale, including, but not limited to, reasonable Trustee's and attorneys' fees, (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it

  23  **Reconveyance**  Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee  Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law  If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

  24  **Substitute Trustee**  Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located  The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law  This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

  25  **Statement of Obligation Fee**  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California

  BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____    _____*Alise Malikyar*_____    (Seal)
                                        Alise Malikyar                       Borrower
                                                                           *[Printed Name]*


_____    _____    (Seal)
                                                                             Borrower
                                                                           *[Printed Name]*


                                    _____    (Seal)
                                                                             Borrower
                                                                           *[Printed Name]*


                                    _____    (Seal)
                                                                             Borrower
                                                                           *[Printed Name]*


_____ *[Acknowledgment on Following Page]* _____

G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

State of _California_                          §
County of _Contra Costa_                       §
                                               §
On _10/20/04_ , before me, _Jacquelyn F Frost, Notary Public_
personally appeared Alise Mahkyar                      *[name and title of officer]*

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument in person(s), or the entity upon behalf of which the
person(s) acted, executed the instrument
WITNESS my hand and official seal

Signature _____ (Seal)

```
JACQUELYN F FROST
Comm # 1450543
NOTARY PUBLIC CALIFORNIA
Contra Costa County
My Comm Expires Nov 11 2007
```

## REQUEST FOR FULL RECONVEYANCE

TO TRUSTEE
        The undersigned is the holder of the note or notes secured by this Deed of Trust, which was recorded in the office of
the Recorder of _____ County, State of California, in book _____ , page _____ of official records
Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full  You are hereby
directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty,
all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto

_____        Date _____
            (Trustee)

G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

Description

The land referred to herein is situated in the State of California, County of Contra Costa, Unincorporated Area, and is described as follows

PARCEL ONE

PORTION OF THE RANCHO SAN RAMON, DESCRIBED AS FOLLOWS

BEGINNING ON THE WEST LINE OF LOT 4 AS SHOWN ON THE MAP OF WALNUT CREEK PARK, FILED FEBRUARY 7, 1911, IN BOOK 1 OF MAPS, PAGE 84, IN THE OFFICE OF THE COUNTY RECORDER OF CONTRA COSTA COUNTY, AT THE NORTH LINE OF THE PARCEL OF LAND DESCRIBED AS PARCEL ONE IN THE DEED FROM H W HABERLAND, ET UX, TO VICTOR MASSOLA, ET UX, RECORDED MARCH 19, 1955 (FILE NO 30583), THENCE ALONG THE WEST LINE OF SAID LOT 4 AS FOLLOWS  NORTH 21 DEG 56' EAST, 119 44 FEET, NORTH 23 DEG 08' EAST 84 3 FEET AND NORTH 60 DEC 11' EAST, 16 33 FEET TO THE NORTH LINE OF THE 2 ACRE PARCEL OF LAND DESCRIBED IN THE DEED FROM KATE HENRY TO H W HABERLAND, ET UX, RECORDED AUGUST 29, 1918, IN BOOK 319 OF DEEDS, PAGE 467, THENCE ALONG SAID NORTH LINE SOUTH 83 DEG 53' 07" WEST, 210 07 FEET AND SOUTH 84 DEG 08' 25" WEST, 41 35 FEET, THENCE SOUTH 5 DEG 51' 55" EAST, 126 62 FEET, THENCE SOUTH 7 DEG 03' 05" WEST, 52 9 FEET TO THE NORTH LINE OF SAID MASSOLA PARCEL (FILE NO 30583), THENCE NORTH 86 DEG 23' 05" EAST, ALONG SAID NORTH LINE, 175 11 FEET TO THE POINT OF BEGINNING

PARCEL TWO

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET UX, RECORDED JUNE 6, 1955, BOOK 2547, OFFICIAL RECORDS, PAGE 366, AS FOLLOWS

"A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS FOR WATER, GAS, OIL AND SEWER PIPE LINES, AND FOR TELEPHONE, TELEVISION SERVICE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE NECESSARY POLES OR CONDUITS TO CARRY SAID LINES OVER A STRIP OF LAND 6 FEET IN WIDTH, THE EAST LINE OF WHICH IS DESCRIBED AS FOLLOWS

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 6 IN THE CENTER LINE OF THE CREEK TRAVERSING THE WESTERLY LINE OF SAID SUBDIVISION AND BEING A CORNER COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION, THENCE FROM SAID POINT OF COMMENCEMENT ALONG THE CENTER LINE OF SAID CREEK AND ALONG THE WESTERLY LINE OF SAID LOT 4, NORTH 21 DEG 56' EAST, 10 66 FEET, THENCE SOUTH 86 DEG 23' 05" WEST 175 11 FEET TO THE ACTUAL POINT OF BEGINNING OF THE HEREIN DESCRIBED EAST LINE, THENCE FROM SAID POINT OF BEGINNING, NORTH 7 DEG 03' 05" EAST 52 9 FEET "

PARCEL THREE

RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET UX, RECORDED JUNE 6, 1955, BOOK 2547, OFFICIAL RECORDS, PAGE 366, AS FOLLOWS

"A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE, FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINGS, PEDESTRIANS AND ANIMALS, FOR WATER, GAS, OIL AND SEWER PIPE LINES, AND FOR TELEPHONE, TELEVISION SERVICE, ELECTRIC LIGHT AND POWER LINES, TOGETHER WITH THE NECESSARY POLES OR CONDUITS TO CARRY SAID LINE OVER A STRIP OF LAND 12 FEET IN WIDTH, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS

Order No   54715-54300227-JFF

425691

COMMENCING AT THE NORTHWEST CORNER OF SAID LOT 6 IN THE CENTER LINE OF THE
CREEK TRAVERSING THE WESTERLY LINE OF SAID SUBDIVISION AND BEING A CORNER
COMMON TO LOTS 4 AND 6 OF SAID SUBDIVISION, THENCE FROM SAID POINT OF
COMMENCEMENT ALONG THE CENTER LINE OF SAID CREEK AND ALONG THE WESTERLY LINE
OF SAID LOT 4, NORTH 21 DEG  56' EAST, 10 66 FEET, THENCE SOUTH 86 DEG'  23' 05" WEST,
175 11 FEET TO THE ACTUAL POINT OF BEGINNING OF THE HEREIN DESCRIBED LINE, THENCE
FROM SAID POINT FO BEGINNING, SOUTH 7 DEG  03' 05" WEST 90 69 FEET AND SOUTH 11 DEG
00' 10" EAST, 119 12 FEET TO THE SOUTH LINE OF THE PARCEL OF LAND DESCRIBED IN THE
*DEED FROM* WILLIAM E  HAMPTON, ET UX, TO H W  HABERLAND, ET UX, RECORDED MAY 31,
1945, IN BOOK 600 OF OFFICIAL RECORDS, PAGE 306 "

PARCEL FOUR

"THE RIGHT TO USE ANY BRIDGE OR BRIDGES NOW OR HEREAFTER LOCATED ON SAID
PROPERTY, SAID RIGHT OF WAY TO BE USED IN CONJUNCTION WITH THE PARTIES OF THE
SECOND PART, THEIR HEIRS OR ASSIGNS", AS RESERVED UNTO H W  HABERLAND, ET UX, IN
THE DEED FROM SAID H W  HABERLAND, ET UX, TO EDMUND G  HAMPTON, ET UX, DATED
OCTOBER 19, 1938, RECORDED NOVEMBER 3, 1937, IN BOOK 486, OF OFFICIAL RECORDS,
PAGE 240  RIGHT OF WAY GRANTED IN THE DEED TO WALTER CLARENCE HABERLAND, ET AL,
RECORDED NOVEMBER 3, 1955, BOOK 2642, OFFICIAL RECORDS, PAGE 420, AS FOLLOWS

"A RIGHT OF WAY (NOT TO BE EXCLUSIVE) AS AN APPURTENANCE TO PARCEL ONE ABOVE,
FOR USE AS A ROADWAY FOR VEHICLES OF ALL KINDS, PEDESTRIANS AND ANIMALS, AND AS
A RIGHT OF WAY FOR WATER, GAS, OIL AND SEWER PIPE LINES AND FOR TELEPHONE,
ELECTRIC LIGHT AND POWER LINES TOGETHER WITH THE NECESSARY POLES OR
UNDERGROUND CONDUITS TO CARRY SAID LINES OVER AND UNDER A STRIP OF LAND 12
FEET WIDE, THE CENTER LINE OF WHICH IS DESCRIBED AS FOLLOWS

BEGINNING AT THE SOUTHERN TERMINUS OF THE CENTER LINE OF PARCEL THREE ABOVE,
THENCE SOUTH 16 DEG  46' 24" EAST, 55 08 FEET, SOUTH 16 DEG  47' 26" EAST, 58 29 FEET,
SOUTH 26 DEG  18' 21" EAST, 93 22 FEET SOUTH 19 DEG 38' 21" EAST, 53 10 FEET, SOUTH 4
DEG  31' 10" WEST, 143 64 FEET AND SOUTH 27 DEG  20' EAST, 75 17 FEET TO THE CENTER
LINE OF RIDGE ROAD, ALSO KNOWN AS TICE VALLEY BOULEVARD

THE EASTERN AND WESTERN LINES THEREOF TO BE LENGTHENED OR SHORTENED TO
EXTEND FROM THE EXTERIOR LINES OF SAID PARCEL THREE TO THE CENTER LINE OF RIDGE
ROAD "

APN          188-112-009

Order No    54715-54300227-JFF

Loan Number  0085244903

# ADJUSTABLE RATE RIDER

**(LIBOR Six-Month Index (As Published by the Wall Street Journal) - Rate Caps Accrued Interest Only for Fixed Rate Period)**

THIS ADJUSTABLE RATE RIDER is made this 15th day of October, 2004, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to **GreenPoint Mortgage Funding, Inc** ("Lender") of the same date and covering the property described in the Security Instrument and located at

**2324 Tice Valley BLVD, Walnut Creek, CA 94595**

[Property Address]

THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY

ADDITIONAL COVENANTS In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows

**A      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 5 750%  The Note provides for changes in the interest rate and the monthly payments, as follows
**4      INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of November, 2009, and on that day every six months thereafter  Each date on which my interest rate could change is called a "Change Date "
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index  The "Index" is the average of interbank offered rates for six month U S dollar-denominated deposits in the London market as published by the Wall Street Journal  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "
If the Index is no longer available, or is no longer published, the Note Holder will choose a new index that is based upon comparable information  The Note Holder will give me notice of this choice
**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding  Two and 250/1000ths percentage points (2 250%) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125% )  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment
**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than 10 750% or less than 2 250%  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One and 00/1000ths** percentage points (1 000% ) from the rate of interest I have been paying for the preceding months  My interest rate will never be greater than 10 750%

---

Adjustable Rate Rider
GreenPoint Mortgage Funding                          Page 1 of 2                          00275MU (H0282) 04/02



G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

425691

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**B    TRANSFER OF PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows

Transfer of the Property or a Beneficial Interest in Borrower  As used in this Section 18, "Interest in the property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law  Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption  Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument  Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration  The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument  If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____ (Seal)        _____ (Seal)
Alise Malikyar                         -Borrower                                              -Borrower


_____ (Seal)        _____ (Seal)
                                       -Borrower                                              -Borrower


*[Sign Original Only]*

Adjustable Rate Rider
GreenPoint Mortgage Funding                    Page 2 of 2                    00275MU (H0282) 04/02

G P M W D 0 0 8 5 2 4 4 9 0 3 1 1 7

**END OF DOCUMENT**