**United States District Court**
For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                    FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

10   ALISE MALIKYAR, ROBERT
     JACOBSEN,                                    No. C 07-03533 WHA
11
             Plaintiffs,
12
        v.                                        **ORDER:  (1) DENYING
13                                                DEFENDANTS' MOTION TO
                                                  DISMISS AGAINST PLAINTIFF
14   JOHN SRAMEK, BERNADETTE                       ALISE MALIKYAR; AND
     SRAMEK, HAROLD M. JAFFEE, John S.            (2) DENYING DEFENDANTS'
15   Sramek, Jr. and Bernadette D. Sramek         MOTION TO DISMISS
     Revocable Living Trust, and DOES 1–100,      AGAINST PLAINTIFF
16                                                ROBERT JACOBSEN**
             Defendants.
17   _____/

18                              **INTRODUCTION**

19           In this action for civil damages for alleged interception of wire and oral

20   communications, defendants move to dismiss against plaintiffs Malikyar and Jacobsen.

21   Defendants filed two separate motions, one against Malikyar and the other against Jacobsen.

22   This order combines the two motions because of the substantial overlap in facts and issues.

23   Although defendants' motions are captioned as summary judgment motions, they are really

24   motions to dismiss because defendants challenge Malikyar's standing and Jacobsen's status as a

25   real party in interest.  Because this order finds that Jacobsen is a real party in interest and

26   Malikyar properly joined him in the suit, defendants' motions are **DENIED**.

27

28

**United States District Court**
For the Northern District of California

**STATEMENT**

In 2006, defendants filed a state-court action against plaintiffs.  The state-court action is still pending and concerns a real estate transaction that is not subject to this action.  Some time after the filing of that suit, plaintiffs began to notice static and clicking on their telephone line at home, located at 2324 Tice Valley Blvd., Walnut Creek (Third Amd. Compl. at ¶ 21).  Malikyar and Jacobsen are married.  Toward the end of April 2007, plaintiffs were in the process of selling that property.  The sale and escrow was set to close on April 30, and it was to go on record the next day (*id*. at ¶ 18).  But on April 27 plaintiffs received from defendant Jaffee a notice of pending action.  The notice contained the confidential escrow number for the pending sale.  Escrow numbers are supposedly held in strict confidence and are never made public.  The notice had the effect of halting the property sale (*id*. at ¶ 19).

Plaintiffs began investigating how defendants had acquired the escrow number.  They questioned all persons involved with the transaction who might have known the number.  All of them denied disclosing the number.  Plaintiffs also asked the phone company to inspect their phone line.  Plaintiffs had engaged in many conversations on that line concerning the state-court litigation and the property sale (*id*. at ¶ 17).  On May 5, a technician from the phone company found speaker wire running from the phone box on the house through some brush to the edge of plaintiffs' driveway.  The wire was connected to a recording device that was housed inside an air-tight box (*id*. at ¶ 22).  An officer from the county sheriff's department confirmed the presence of the wiretap and filed a report (*id*. at ¶ 23).

Malikyar's status in this action has been affected by Jacobsen's bankruptcy proceedings.  One of Jacobsen's companies filed for bankruptcy in the United States Bankruptcy Court for the District of Nevada on March 13, 2007 (RJN, Dkt. 38, Exh. 4).  On April 18, the bankruptcy court transferred the action to the United States Bankruptcy Court for the Northern District of California.  The petition was dismissed on June 4 for filing in bad faith (*id*. at Exh. 6).  On May 25, Jacobsen filed a bankruptcy petition under Chapter 13 in the United States Bankruptcy Court for the Eastern District of Texas (*id*. at Exh. 9).  Jacobsen filed his schedules and statement of financial affairs on June 25.  He did not list this wiretap suit as an asset of his

United States District Court

For the Northern District of California

1    bankruptcy estate (*id*. at Exh. 11).  The suit was filed on June 11.  Jacobsen amended his

2    bankruptcy schedules to include this action on March 13, 2008.

3          The issue of whether Malikyar was the real party in interest was first raised by

4    defendants in a motion for summary judgment on October 4, 2007.  An order entered on

5    November 7 granted the motion with leave to amend.  The order found that Malikyar could

6    cure her status by joining the real party in interest.  Who the real party in interest was depended

7    on the outcome of two motions in bankruptcy court that were pending at the time.  Jacobsen

8    had filed a motion to dismiss the bankruptcy petition, and the bankruptcy trustee had filed a

9    motion to convert the petition from Chapter 13 to Chapter 7.  On December 5, the bankruptcy

10   court denied Jacobsen's motion to dismiss and converted the petition to Chapter 7.  Jacobsen

11   then purchased this wiretap lawsuit, which had become the property of the bankruptcy trustee

12   under Chapter 7.  The purchase became effective June 19, 2008 (Case Management Statement,

13   Dkt. 88, Exh. 2).  Plaintiffs filed the third amended complaint on August 19, naming both

14   Malikyar and Jacobsen as plaintiffs, and served it on defendants on September 15.[1]

15         Defendants filed this motion on October 2.  Defendants contend that joining Jacobsen

16   did not cure Malikyar's status.  In addition, they contend that Jacobsen is not a real party in

17   interest because his purchase of the wiretap claim does not relate back to when the suit was

18   first filed.  They also contend that he is barred from bringing the action under the doctrine of

19   judicial estoppel.

20                                              **ANALYSIS**

21         Defendants caption their motions as motions for summary judgment.  But a summary

22   judgment motion is not used to challenge a plaintiff's standing or whether the plaintiff is a real

23   party in interest.  A challenge to a party's status is brought as an objection under Rule 17(a)(3).

24   Because subject-matter jurisdiction depends on the resolution of whether Jacobsen is a real

25   party in interest and whether joining Jacobsen to the suit cures Malikyar's defective status as a

27   _____

28        [1] Plaintiffs attempted to file the amended complaint on August 15 but had difficulties with the
     electronic filing system.  They filed it manually on August 19.  The Court denied defendants' ex parte motion to
     strike the amended complaint on September 5, and ordered plaintiffs to serve the complaint by September 16.

United States District Court

For the Northern District of California

1   plaintiff, the motions will be considered Rule 12(b)(1) motions to dismiss.  *Allstate Ins. Co. v.*

2   *Hughes*, 358 F.3d 1089, 1093–94 (9th Cir. 2004).[2]

3         A jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the

4   pleadings or by presenting extrinsic evidence.  *Warren v. Fox Family Worldwide, Inc.*,

5   328 F.3d 1136, 1139 (9th Cir. 2003).  "In a facial attack, the challenger asserts that the

6   allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.

7   By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by

8   themselves, would otherwise invoke federal jurisdiction."  If a Rule 12(b)(1) motion is a

9   facial attack, a district court must accept all allegations in the complaint as true and draw all

10  reasonable inferences in favor of the plaintiffs.  *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir.

11  2004).  Defendants bring a factual attack because they allege that no "event gives Malikyar

12  standing to bring this action."  They also allege that Jacobsen's purchase of the wiretap claim

13  from the bankruptcy trustee did not confer standing on him.  Both allegations dispute the truth

14  of allegations in the complaint that there is subject-matter jurisdiction under 18 U.S.C. 2520.

15  "If the moving party converts the motion to dismiss into a factual motion by presenting

16  affidavits or other evidence properly brought before the court, the party opposing the motion

17  must furnish affidavits or other evidence necessary to satisfy its burden of establishing

18  subject-matter jurisdiction."  *Ibid.*

19        **1.**    **RULE 17(a)(1).**

20        Rule 17(a)(1) provides that "[a]n action must be prosecuted in the name of the real

21  party in interest."  The real party in interest is the person who has the right to sue under the

22  substantive law.  In general, it is the person holding title to the claim or property involved, as

23  opposed to others who may be interested in or benefit by the litigation.  *U-Haul Int'l, Inc. v.*

24  *Jartran, Inc.*, 793 F.2d 1034, 1038 (9th Cir. 1986).

25        There is no contention that plaintiff Malikyar would not have been a real party in

26  interest under 18 U.S.C. 2520 if co-plaintiff Jacobsen had not filed for bankruptcy prior to

27  Malikyar's filing of the suit.  Plaintiff Malikyar was not the real party in interest when the suit

28

---

[2] Unless indicated otherwise, internal citations are omitted from all quoted authorities.

**United States District Court**
For the Northern District of California

1    was first filed only because the wiretap claim, as community property, was presumptively the

2    property of Jacobsen's bankruptcy estate.  The issue, then, is whether Jacobsen's subsequent

3    purchase of the wiretap claim from his bankruptcy estate made him a real party in interest,

4    allowing Malikyar's to properly join him in the suit and cure her status as a plaintiff.

5         "Whether plaintiff is the real party in interest is determined by the controlling

6    substantive laws." *Allstate Insurance Co. v. Hughes*, 358 F.3d 1089, 1093–94 (9th Cir. 2004).

7    The controlling substantive law is federal bankruptcy law.  Upon filing of a petition for

8    bankruptcy, the property of the bankruptcy estate includes all legal or equitable interests of

9    the debtor in property as of the commencement of the case.  This includes legal claims.

10   *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 203–204 n. 9 (1983).  In a Chapter 13

11   petition, the debtor has full authority to represent the estate.  *In re DiSalvo*, 219 F.3d 1035,

12   1039 (9th Cir. 2000).  Jacobsen, as the debtor under Chapter 13, was in control of the estate and

13   could have brought the suit as the real party in interest.  An order entered on November 8, 2007,

14   held that Malikyar must join Jacobsen to proceed with the action (Order Granting Motion For

15   Summary Judgment, Dkt. 47, p. 6).  The order granted Malikyar leave to amend to name any

16   indispensable parties, but it stated that she should only do so after the bankruptcy court issued

17   its orders on Jacobsen's motion to dismiss and the trustee's motion to convert the bankruptcy

18   petition into a Chapter 7 petition (*ibid.*).

19        The bankruptcy court denied Jacobsen's motion to dismiss and converted the petition

20   into a Chapter 7 petition (Case Management Statement, Dkt. 86, Exh. 3).  The conversion

21   made the bankruptcy trustee, not Jacobsen, the real party in interest in the wiretap suit.  It is

22   undisputed, however, that Jacobsen thereafter purchased the claim from the bankruptcy estate.

23   The sale became effective June 19, 2008 (*id.* at Exh. 2).  This made Jacobsen, once again, the

24   real party in interest.

25        Malikyar joined Jacobsen in the suit in an amended complaint filed August 19, 2008.

26   The joinder of Jacobsen cured Malikyar's defective status in bringing the suit without being

27   the real party in interest.  "The court may not dismiss an action for failure to prosecute in the

28   name of the real party in interest until, after an objection, a reasonable time has been allowed

United States District Court

For the Northern District of California

1    for the real party in interest to ratify, join, or be substituted into the action.  After ratification,

2    joinder, or substitution, the action proceeds as if it had been originally commenced by the real

3    party in interest."  FRCP 17(a)(3).  Jacobsen is a real party in interest and was properly joined.

4    The action now proceeds as if originally commenced by the real party in interest.

5            **2.      MALIKYAR'S STATUS WAS CURED EVEN THOUGH
             JACOBSEN PURCHASED THE WIRETAP CLAIM**

6            **AFTER THE SUIT COMMENCED.**

7            Defendants contend that Jacobsen's purchase of the wiretap claim and subsequent

8    joinder after the lawsuit commenced cannot confer standing on Malikyar.  Defendants cite

9    *United States for Use and Benefit of Wulff v. CMA, Inc.*, 890 F.2d 1070, 1074–75 (9th Cir.

10   1989), for the proposition that a subsequent assignment does not relate back in order to

11   validate a premature lawsuit.  *Wulff* is distinguishable.  The holding there addressed the issue

12   of whether an assignment of a claim relates back to the date of the original filing in order to

13   satisfy the statute of limitations.  Here, the statute of limitations is not at issue.  A suit brought

14   under Section 2520 must be filed no later "than two years after the date upon which the

15   claimant first has a reasonable opportunity to discover the violation."  18 U.S.C. 2520(e).

16   Plaintiffs discovered the violation no earlier than May 5, 2007 (TAC ¶ 22).  The third amended

17   complaint was filed August 19, 2008, and notice was given to all defendants on September 15,

18   well within the two-year limit.

19          Even though Jacobsen purchased the wiretap claim after the suit commenced, he is

20   still a real party in interest, and Malikyar's status was cured when Jacobsen was joined in the

21   action.  "It has been held that even when the claim is not assigned until after the action has

22   been instituted, the assignee is the real party in interest and can maintain the action."

23   *Federal Deposit Insurance Corp. v. Main Hurdman*, 655 F. Supp. 259, 267 (E.D. Cal. 1987).

24   An assignment made after the suit has been filed is not invalid if the assignment was made

25   before trial, and the defendant is not prejudiced.  A defendant is not prejudiced if the

26   assignment does not cause the party to lose the right to assert any defenses against the assignee

27   which it could have asserted against the assignor.  *Dubuque Stone Products Co. v. Fred L. Gray*

28   *Co.*, 356 F.2d 718, 724 (8th Cir. 1966).  Here, trial has not begun, and the assignment to

6

Jacobsen did not cause defendants to lose the right to assert any defenses.  The bankruptcy trustee fully transferred all of the estate's "rights, title, and interest" in the suit (Dkt. 88 at Exh. 2).  "The basic purpose of the rule requiring that every action be prosecuted by the real party in interest is to protect a defendant from subsequent similar actions by one not a party to the initial action."  *Pacific Coast Agricultural Export Association v. Sunkist Growers, Inc.*, 526 F.2d 1196, 1208 (9th Cir. 1975).

Defendants also contend that Malikyar cannot cure her status because real party in interest is determined at the time the action is filed.  Defendants again cite *Wulff* for the proposition that a party who is not a real party in interest at the outset of the litigation cannot subsequently cure this defect.  This proposition is not an accurate statement of *Wulff*'s holding, and it plainly runs contrary to Rule 17 itself which allows a plaintiff to take curative steps.

Defendants further contend that Malikyar did not have standing[3] when she first filed the suit and is, therefore, not permitted to cure her defective party status by joining Jacobsen.  Defendants cite *Mutuelles Unies v. Kroll & Linstrom*, 957 F.2d 707, 712 (9th Cir. 1992), for the proposition that only a party who had standing at the commencement of the suit but was not a real party in interest can take curative measures under Rule 17.  This is not an accurate statement of *Mutuelles Unies*.  That decision merely rejected the defendant's argument that the district court improperly allowed two co-insurers to ratify the suit because the ratifications were used to defeat a statute of limitations.  Defendants, here, apparently build their proposition out of *Mutuelles Unies*'s distinction from *Wulff*.  In *Wulff*, ratification was not proper because the plaintiffs were not permitted under the Miller Act to bring the action in the first place.  890 F.2d at 1074–1075.  In *Mutuelles Unies*, ratification was proper because the plaintiff was a real party in interest at the outset of the suit and brought the action on its own behalf.  957 F.2d at 712.  *Mutuelles Unies* does not state a rule that differs from *Wulff*.  Defendants provide no other support.  The argument must fail.

United States District Court

For the Northern District of California

---

[3] Although the November 7 order stated that Malikyar did not have standing, the order should have stated that Malikyar was not a real party in interest.  Defendants were not prejudiced by this error and not injured in any way because the decision to grant leave to amend was correct regardless of the error.

### 3.   MALIKYAR IS ALLOWED TO CURE
### HER STATUS UNDER RULE 17(a)(3).

Defendants contend that Malikyar should not be allowed to cure her status because it was not difficult to ascertain who the real party in interest when the suit was originally filed and there was no understandable mistake made. They cite *Wulff* and the advisory committee notes to Rule 17 for support. The advisory committee stated that "[t]he purpose of [Rule 17(a)(3)] is to prevent forfeiture of an action when determination of the right party to sue is difficult or when an understandable mistake has been made." *Wulff* stated that "[r]elation back for statute of limitation purposes has been denied where a plaintiff filed suit on a claim before it was actually assigned to the plaintiff. The subsequent assignment is not treated as a joinder, substitution or ratification of the premature suit by the assignor." 890 F.2d at 1074. Defendants contend that Malikyar should not be allowed to cure her status under Rule 17(a)(3) because it was not difficult to determine that Jacobsen, not Malikyar, was the real party in interest when the suit was filed because Jacobsen had already filed for bankruptcy. Jacobsen could bring the suit, but not Malikyar.

The situations contemplated by *Wulff* and the advisory committee are distinguishable. In those instances, parties sought to toll the statute of limitations by filing suit, not by the real party in interest, then use the shelter of Rule 17(a)(3) once the real party in interest was joined or substituted in the action to beat the statute of limitations. There is no evidence of such a ploy here. Plaintiffs filed their complaint well within the statute of limitations, which would have run on May 5, 2009. Defendants contend in their reply brief that "the filing of this case by Malikyar alone was intended to circumvent Jacobsen's duty to list the alleged claim in his bankruptcy schedules" (Reply Br. 3). But defendants do not provide any support for this assertion. Malikyar is not prevented from curing her status under Rule 17(a)(3).

### 4.   JUDICIAL ESTOPPEL.

Defendants contend that Jacobsen cannot bring this wiretap action under the doctrine of judicial estoppel. They contend that the doctrine prohibits Jacobsen from bringing this suit because he did not initially declare his right to the wiretap claim as an asset of his bankruptcy estate. "Judicial estoppel is an equitable doctrine that precludes a party from gaining an

advantage by asserting one position, and then later seeking an advantage by taking a clearly

inconsistent position.  [The Ninth Circuit] invokes judicial estoppel not only to prevent a party

from gaining an advantage by taking inconsistent positions, but also because of general

considerations of the orderly administration of justice and regard for the dignity of judicial

proceedings, and to protect against a litigant playing fast and loose with the courts."

*Hamilton v. State Farm Fire & Casualty Co.*, 270 F.3d 778, 782 (9th Cir. 2001).

A district court may consider three factors to inform its decision whether to apply the

doctrine:  (1) whether a party's later position is clearly inconsistent with its earlier position;

(2) whether the court in the earlier lawsuit accepted the party's position; and, (3) whether the

party seeking to assert an inconsistent position would derive an unfair advantage or impose an

unfair detriment on the opposing party if not estopped.  *Id.* at 782–783.  "In the bankruptcy

context, a party is judicially estopped from asserting a cause of action not raised in a

reorganization plan or otherwise mentioned in the debtor's schedules or disclosure statements."

*Ibid.*  "Judicial estoppel will be imposed when the debtor has knowledge of enough facts to

know that a potential cause of action exists during the pendency of the bankruptcy, but fails to

amend his schedules or disclosure statement to identify the cause of action as a contingent

asset."  *Id.* at 784.

Jacobsen is not judicially estopped from bringing this action because he amended his

schedules to include this action.  Defendants contend that Jacobsen's amendment does not save

the claim from being judicially estopped.  No authority is cited, however, that undermines the

clear language of *Hamilton*.  The Ninth Circuit clearly allows a debtor to escape the doctrine of

judicial estoppel if he amends his schedules to identify the cause of action even if he had

knowledge of enough facts to know that a potential cause of action existed during the pendency

of the bankruptcy.  *Ibid.*  Furthermore, defendants have made no showing that the bankruptcy

court accepted Jacobsen's omission of the wiretap action for the basis of any decision made

prior to his amendment.  Instead, defendants rely on *Britton v. Co-Op Banking Group*, 4 F.3d

742, 744 (9th Cir. 1993), for the proposition that judicial estoppel can apply even when a party

was unsuccessful in asserting its position in the prior judicial proceeding "if the court

United States District Court
For the Northern District of California

determines that the alleged offending party engaged in fast and loose behavior which undermine the integrity of the court." Defendants do not accurately state the holding of *Britton*. The court expressly *rejected* this view. *Ibid.* Defendants' argument must fail.

**CONCLUSION**

For the foregoing reasons, defendants motions to dismiss are **DENIED**.

**IT IS SO ORDERED.**

Dated:  November 12, 2008.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

**United States District Court**
For the Northern District of California

10